# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Two Black and Blue Motorola Cellphones and One Black<br>Apple iPhone Located at 301 N. Church Street<br>Winston Salem, North Carolina | ) ) ) ) ) ) ) Case No. 1:22MJ 519 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | knowingly or intentionally, manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance |

The application is based on these facts:
See attached affidiavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Benjamin L. Crocker by LPA
*Applicant's signature*

Benjamin L. Crocker, Special Agent, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 12/20/22

*Judge's signature*

City and state: Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

*Property to be searched*

The property to be searched is as follows:

a. **TARGET DEVICE 1**: a black Apple iPhone with a broken screen.



**TARGET DEVICE 1** is currently located at the Forsyth County Sheriff's Office in Winston Salem, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 1** for the purpose of identifying the electronically stored information described in Attachment B.

c. **TARGET DEVICE 3**: a black and blue Motorola phone with no protective case.



**TARGET DEVICE 3** is currently located at the Forsyth County Sheriff's Office in Winston Salem, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 3** for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on the **TARGET DEVICE(s)** described in Attachment A that relate to violations of 21 United States Code Sections 846 and 841 (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same); and 21 U.S.C. Section 843(b) (use of a communications facility to commit a felony) and involve PETERSON:

    a. Electronic communications between PETERSON and co-conspirators both known and unknown;

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **TARGET DEVICE(s)** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO BLACK AND BLUE MOTOROLA CELL PHONES AND ONE BLACK APPLE IPHONE POSSESSED BY SHONTAIN PETERSON | Case No. 1:22mj519 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Special Agent Benjamin L. Crocker, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Currently, I am investigating the drug distribution activities of Shontain Levon PETERSON in the Middle District of North Carolina. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of multiple electronic devices which are currently in law enforcement possession, and the extraction from the devices of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since August 2019. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses. I have

participated in investigations involving all these areas. Prior to my career with ATF, I worked for the South Carolina Highway Patrol in South Carolina for approximately 6 years. During my tenure with the South Carolina Highway Patrol, I served as a Patrolman, Advanced Special Response Team member and on the Criminal Interdiction Team. During my career in law enforcement, I have been involved in numerous complex case investigations involving federal or state firearms and controlled substance violations. Prior to my career in law enforcement, I attended The Citadel and graduated in 2013 with a Bachelor of Arts Degree in Criminal Justice.

      3.     I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of acquiring and distributing narcotics, their use of telephones, and their use of code and slang words to conduct their transactions. I am familiar with practices used by traffickers involving the collection of proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I am also familiar with the common practice among narcotics traffickers to carry multiple phones and dispose of phones frequently to evade law enforcement detection of their illegal activities. I have conducted and assisted with numerous investigations regarding the unlawful possession, use, and distribution of narcotics during my law enforcement career. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearm and drug related crimes, including, but not limited to, electronic and visual surveillance, witness interviews, the use of search warrants, the use of confidential informants, the use of pen registers/trap and trace devices, mobile tracking devices, and the use of undercover agents.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched shall be referred to as the "**TARGET DEVICE 1**." **TARGET DEVICE 1** is an Apple iPhone. A photograph of the **TARGET DEVICE 1** has been attached to this application for further identification.

6. The property to be searched shall be referred to as the "**TARGET DEVICE 2**." **TARGET DEVICE 2** is a Motorola Cellphone with a clear case. A photograph of the **TARGET DEVICE 2** has been attached to this application for further identification.

7. The property to be searched shall be referred to as the "**TARGET DEVICE 3**." **TARGET DEVICE 3** is a Motorola Cellphone. A photograph of the **TARGET DEVICE 3** has been attached to this application for further identification.

8. **TARGET DEVICE 1, TARGET DEVICE 2** and **TARGET DEVICE 3** are currently located at the Forsyth County Sheriff's Office in Winston Salem, North Carolina.

9. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE(S)** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10. During the month of November 2022, ATF TFO La Valley received information from a confidential informant (CI) that both Shontain Levon PETERSON and Teddrick Lamont HILL were actively involved in the sale of narcotics in Winston-Salem, North Carolina. On November 8, 2022, an ATF CI made phone contact and asked PETERSON if an associate could purchase cocaine from PETERSON. The CI contacted **TARGET DEVICE 1** that PETERSON utilizes. PETERSON agreed to same and informed the CI to tell the third party to respond to 180 Willow Oak Dr Apt 304. The third-party associate is another ATF CI[1].

11. On November 8, 2022, an ATF CI arranged for ATF CI2 to meet with PETERSON to purchase one (1) ounce of cocaine hydrochloride. When CI2 arrived, PETERSON invited CI2 inside 180 Willow Oak Dr Apt 304. CI2 observed a bag of cocaine base and asked if that belonged to PETERSON. He replied that it belonged to his associate, believed to be HILL, who was not present. PETERSON was under the impression that CI2 was purchasing two (2) ounces of cocaine hydrochloride. CI2 informed PETERSON that he would purchase two (2) ounces; however, CI2 stated he wanted one (1) of the ounces as cocaine base. PETERSON stated he would cook it and proceeded to cook one (1) ounce into cocaine base while CI2 waited. After completing the cooking process, CI2 paid PETERSON $2,200 in ATF undercover funds to complete

---

[1] The CI has a known criminal history and is a paid confidential informant.

the transaction for the two (2) ounces. The transaction was audio/video recorded, the substances field tested positive, and funds utilized were prerecorded. The DEA Laboratory later confirmed one of the exhibits purchased was cocaine base with an official weight of 27.45 grams and one of the exhibits purchased was cocaine hydrochloride with an official weight of 27.59 grams.

15. On November 15, 2022, ATF CI2 met with PETERSON at his apartment to discuss a previously arranged purchase of cocaine base involving an ATF UC. CI2 arrived and went inside 180 Willow Oak Drive, Apt. 304. CI2 observed a large amount of what appeared to be cocaine hydrochloride, cocaine base, and marihuana inside the apartment. PETERSON and HILL were both inside the residence. CI2 acquired four and a half (4½) ounces of cocaine base from PETERSON. In addition, HILL provided PETERSON with two baggies of cocaine base cocaine totaling two and a half (2½) ounces. PETERSON then provided the cocaine base received from HILL to CI2 as a "front." CI2 then provided PETERSON with the undercover buy funds and took the cocaine base to an ATF UC in a nearby parking lot (the ATF UC had arrived and parked in the parking lot of the residence). After transferring the cocaine base to the ATF UC, CI2 received $5,400 in ATF undercover funds from the ATF UC, which the CI then paid to PETERSON. PETERSON returned $500 as a broker fee to CI2. The cocaine base weighed approximately 200.75 grams. The transaction was audio/video recorded, the substance field tested positive, and funds utilized were prerecorded. The DEA Laboratory later confirmed the exhibit purchased was cocaine base with an official weight of 195 grams.

16. On November 16, 2022, CI2 was directed by PETERSON to travel to 180 Willow Oak Drive, Apt. 304, to meet with HILL and receive a sample of fentanyl. ATF CI2 called PETERSON to set up the deal on PETERSON's **TARGET DEVICE 1**. When the CI arrived, HILL provided the CI approximately two (2) grams of fentanyl. The transaction was audio/video recorded.

17. On November 17, 2022, an ATF UC met with PETERSON and paid him $2,750 for the two and a half (2½) ounces of cocaine base that PETERSON and HILL fronted to CI2 on November 15, 2022. CI2 set up the meet between PETERSON and an ATF UC earlier that day via a recorded call with a **TARGET DEVICE 1** PETERSON utilizes. During their call, PETERSON instructed CI2 to tell the ATF UC to meet him at his apartment where CI2 picked up the crack cocaine on the 15th and a sample of fentanyl on the 16th (180 Willow Oak Drive, Apt. 304 in Winston-Salem, North Carolina). The transaction was audio/video recorded and funds utilized were prerecorded.

18. On November 28, 2022, an ATF UC and CI2 met with PETERSON and discussed the UC's desire to obtain approximately four (4) ounces of fentanyl so that the UC could press his own pills. PETERSON informed the UC and CI2 that he had been fronted approximately nine (9) ounces of fentanyl by his source of supply (SOS) and needed to provide his SOS money prior to placing another order. PETERSON agreed to have the UC pay him $2,500 for the four (4) ounces and owe him $3,100. PETERSON called his SOS, with **TARGET DEVICE 2,** who agreed to meet the group at 2825 New Walkertown Road, Winston Salem, North Carolina. PETERSON also spoke with CI2 with **TARGET DEVICE 2** to orchestrate the narcotics transaction. The UC observed the SOS

and documented his license plate. PETERSON entered the SOS's vehicle and when he exited, he was carrying a Christmas bag that PETERSON gave to the UC, which contained the four (4) ounces of fentanyl. The UC paid PETERSON the agreed upon $2,500 with an agreement to repay the $3,100 later. The fentanyl weighed approximately 115.97 grams. The transaction was audio/video recorded, the substance field tested positive, and funds utilized were prerecorded.

19. On November 30, 2022, CI2 received a phone call from the **TARGET DEVICE 1** that PETERSON utilized. PETERSON stated he and his "brother" wanted to discuss having the UC and CI2 take their raw fentanyl and press it into pills for them. When they met in person, CI2 informed PETERSON that the UC and CI2 were still waiting on materials to begin pressing pills. CI2 explained the profit opportunities to PETERSON if they pressed his fentanyl into pills. PETERSON stated his "brother" gets his fentanyl from PETERSON. PETERSON showed CI2 a bag of fentanyl that PETERSON estimated to be approximately 125 grams. CI2 suggested PETERSON put his SOS in contact with the UC, which PETERSON said he would consider. The transaction was audio/video recorded.

20. On December 6, 2022, an ATF UC met with PETERSON and paid him $3,100 for the partially fronted four (4) ounces of fentanyl received on November 28, 2022. The UCs meeting had been set up by CI2 earlier that day with the **TARGET DEVICE 1**. PETERSON showed the UC approximately four (4) ounces of fentanyl that he was in possession of and stated he wanted the UC to press an entire kilo of fentanyl

into pills for him. The transaction was audio/video recorded and funds utilized were prerecorded.

21. On December 6, 2022, at approximately 8:30 pm, CI2 received a phone call from PETERSON. **TARGET DEVICE 1** is what PETERSON utilized and the conversation lasted approximately 3 minutes and 22 seconds. CI2 and PETERSON discussed an unknown male counterpart of PETERSON wanting to get fentanyl pills and providing fentanyl for the pressing of fentanyl pills. During the conversation, there was discussion of approximate profit, weights needed to make an amount of pills and how much each pill would be worth. The phone call ended with PETERSON and CI2 talking about meeting in person the following day.

22. On December 13, 2022, CI2 arranged a meet between the UC, CI2, and PETERSON. During the meet, PETERSON provided the UC and CI2 with half a kilo of fentanyl and the UC provided PETERSON with a $5,000 "down payment." PETERSON told the UC and CI2 that they needed nine (9) ounces back out of half the kilo of fentanyl; however, they had not had time to separate the amount they planned to keep from the amount they planned to sell the UC and CI2. The fentanyl weighed approximately 520 grams. The transaction was audio/video recorded, the substance field tested positive, and funds utilized were prerecorded.

23. On December 14, 2022, ATF Special Agents (SA) and Task Force Officers (TFO) arrested PETERSON on an issued Federal Arrest Warrant in the Middle District of North Carolina. An ATF UC and CI2 arranged the meeting with PETERSON through

the **TARGET DEVICE 1**. During the arrest, **TARGET DEVICE(s) 1, 2 and 3** were located on PETERSON along with other items.

## TECHNICAL TERMS

24. Based on my training and experience, I use the following technical term to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE(s)** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE(s)** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE(s)** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICE(s)** to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on the preceding information, there is probable cause to believe that the named items and information more fully described in Attachment B, constituting evidence or fruits of violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846 and 21 U.S.C. § 843 will be found in the **TARGET DEVICE(s)** more fully described in Attachment A.

/S/ BENJAMIN L. CROCKER
Benjamin L. Crocker, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Dated: December 10, 2022

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina